# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

KENNETH THERRIEN,

    Plaintiff,

v.                                                                      Case No: 5:16-cv-375-Oc-30PRL

EDUARDO BUSTAMANTE-MUNT,
SHERWIN SCOTT, WALTER RAY,
JOHN DOES 1-3 and SHERIFF OF
MARION COUNTY, FLORIDA,

    Defendants.

## SUMMARY JUDGMENT ORDER

This case started when 73-year-old Kenneth Therrien was stopped after he rolled through a stop sign. Ultimately, five law enforcement officers from two agencies responded and multiple men had to subdue Therrien so he could be handcuffed and arrested for obstruction. Therrien claims the force used against him was excessive. The Court, though, concludes Defendants are entitled to summary judgment because Therrien has not proved the violation of a clearly established constitutional right.

## MATERIAL FACTS

On the morning of June 5, 2012, Marion County Sheriff's Office Deputy Eduardo Bustamante-Munt saw Kenneth Therrien roll through a stop sign. Bustamante-Munt turned on his lights and stopped Therrien, who pulled over near the entrance to his property. The traffic stop was recorded by Bustamante-Munt's dash cam, as well as the dash cam of

Deputy Sherwin Scott, who came to assist Bustamante-Munt. In the videos, the terrain appears to be a mix of sand and rock, with scattered leaves, twigs, and brush.

As soon as Therrien stopped his truck, he got out and approached Bustamante-Munt's vehicle. The recording shows Therrien was wearing shorts and an unbuttoned, short-sleeved shirt that exposed his chest and abdomen (which is relevant because of Therrien's injuries). Bustamante-Munt ordered Therrien back into his vehicle three times, and Therrien returned to his truck. Bustamante-Munt then approached Therrien's vehicle and told Therrien he was stopped for running a stop sign. Therrien denied running the stop sign,[1] cursed at Bustamante-Munt, and told him, "You're pissing me off and I'll tell you right now it's not a good thing." Bustamante-Munt took Therrien's license, registration, and proof of insurance and returned to his patrol vehicle.

After several minutes passed, Therrien walked to the front of his truck, out of view of the camera. Bustamante-Munt approached Therrien to ask if he had a new proof of insurance and, after a short conversation, again asked Therrien to step back into his truck. Bustamante-Munt returned to his patrol vehicle, and Therrien returned to his vehicle a second time. At this point, the audio recording of Bustamante-Munt's video ends. Within a short time, though, Scott arrives and his dash cam audio records the rest of the stop.

The two videos show that within minutes of Therrien returning to his vehicle for the second time and Scott arriving, Therrien again walks to the front of his truck. Bustamante-Munt immediately tells Therrien to return to his truck. When Therrien did not, Scott and

---

[1] In his response, Therrien admits the video shows him rolling through the stop sign.

2

Bustamante-Munt approached Therrien—leaving the camera's view. Therrien tells the deputies, "Don't tell me what to do with my property." Scott tells Therrien, "We're in the middle of a traffic stop," to which Therrien replies, "Take me to jail then." Scott tells Therrien, "Come on," and seconds later tells Therrien, "Don't resist."

At this point, it appears from the audio and testimony of the parties that Bustamante-Munt and Scott wrestle Therrien to the ground. The deputies tell Therrien to put his hands behind his back, to which Therrien replies, "No, I'm not. No, I'm not." Therrien then tells the officers, "Get your knee out of my fucking head. I didn't know you guys were fucking stupid." The deputies tell Therrien again to put his hands behind his back, to which he responds, "I can't hear you. I'm deaf."[2] After more struggling is heard, the deputies again order Therrien to put his hands behind his back, to which he replies, "Why you guys wanna hurt people?"

Therrien continues to curse at the deputies and tells them that his grandson would be driving by and would "stop this shit." The deputies tell Therrien to "let go" because he was grabbing their arms to prevent the deputies from handcuffing him. Therrien then tells the deputies, "Get off me and I'll go a lot easier. Get the fuck off my back." At this point, the deputies radioed for backup.

The deputies' affidavits and deposition testimony explain that Therrien got his arms underneath himself with a single handcuff around his wrist. With his arms under him,

---

[2] Although Therrien said he was deaf, he had no trouble communicating with the deputies for the remainder of the video.

Therrien locked his hands, making it impossible for the deputies to handcuff Therrien. So the deputies used their body weight to hold Therrien down until backup arrived. Therrien does not deny this, but says that the deputies were elbowing him in the head the whole time he was on the ground.[3]

After more insults from Therrien and back-and-forth with the deputies, Bustamante-Munt tells Therrien, "Sir, don't fight no more." Therrien responds, "Why? All these people looking at you?" referring to vehicles driving by. Therrien then talks about how the deputies' arrest of him, a 74-year-old[4] man, will be in the newspaper. And he discusses how much the County will make off his arrest, lamenting the amount of taxes he already pays. Therrien then asks the deputies why they want to hurt somebody, to which Scott replies, "That's the last thing we want to do." All of this is in a calm albeit agitated voice.

A short time later, Therrien tries to bargain with the deputies, saying, "If you let me up, I'll go peacefully. You let me up first though." Scott says, "Nope, doesn't work that way." Therrien replies, "Well, I can't go peacefully." Therrien then says he hopes he strokes out, calling the deputies a gay slur, threatening that they'll pay for this one. He also tells the deputies they will lose their jobs. Scott tells Therrien all he had to do was wait in his vehicle for the deputies, to which Therrien replies that he is fed up waiting on people.

---

[3] Therrien testified that the blows lasted for forty-five minutes. But the traffic stop did not last for forty-five minutes, according to the video recordings, so the Court assumes that the blows lasted, at most, for the duration of the traffic stop.

[4] In the video, Therrien repeatedly refers to himself as a 74-year-old man. But his court filings say he was only 73 years old at the time.

4

After another few minutes, Scott tells Therrien, "All you gotta do is let us cuff you behind your back." Therrien responds, "No, you ain't cuffing me. You would've before, I would've let you. But I'll be a son of a bitch if I'm gonna let you fucking people living off me just do what they want to do with me." A few seconds later, Bustamante-Munt is heard telling dispatch, "We are just holding him down."

Therrien then laments the fact that this is happening before he even got his morning coffee. He says, "Two fucking 200 pound men sitting on a 74-year-old [sic] guy." Scott replies, "Yeah, yeah. It goes to show we don't want to hurt you." Therrien complains about the deputies having their knee on his head and pushing him into the dirt, saying, "You don't give a fuck about nobody."

After more back-and-forth, backup arrives and two men (one of whom is Defendant Walter Ray) sprint over to where Scott and Bustamante-Munt have Therrien on the ground. One of the men yells at Therrien to stop resisting as Therrien screams, "You're breaking my fucking arm." A fifth man walks over as someone is heard pleading with Therrien, "Mr. Ken, stop resisting."

As Therrien is being led away, the deputies tell Therrien they are escorting him to Bustamante-Munt's patrol vehicle so he can rest. The law enforcement officers agree to loosen Therrien's cuffs, which he complained were too tight. One of the law enforcement officers asks Therrien why he was acting like that, and Therrien says, "I wasn't acting like that." He then explained Bustamante-Munt had told him to get back in his truck, but that he was on his property. Here, the tape ends.

What is not shown on the tape is that paramedics arrived to check out Therrien, and, importantly, that Therrien refused medical treatment. Therrien submitted photos of his injuries, showing scrapes and abrasions to his head, abdomen, elbows, and knees. Notably, there is no bruising to Therrien's head, although there are scrapes to one ear and a red mark behind his left ear. In his affidavit, Therrien says that he suffered injuries to his mouth, head, ears, back, and neck.

## **PROCEDURAL HISTORY**

Almost four years after his arrest, Therrien filed this lawsuit against Bustamante-Munt, Scott, the Marion County Sheriff in his official capacity, Robert Campbell[5] and Walter Ray—two of the other three law enforcement agents who arrived at the traffic stop—and John Does 1-3. The Complaint alleges Bustamante-Munt and Scott refused to let Therrien off the ground, even when he was begging to get up to breathe (an allegation refuted by the recording). The Complaint further alleges Bustamante-Munt and Scott continued to beat Therrien while he was on the ground, even after he stopped resisting.

The Complaint has three counts. Count I is a section 1983 excessive force claim against Bustamante-Munt, Scott, Ray, and the John Doe Defendants. Count II is a section 1983 excessive force claim against the Marion County Sheriff in his official capacity. Count III is a section 1983 failure to intervene claim against all Defendants.

---

[5] Campbell was dismissed from this action pursuant to a stipulation among the parties. (Doc. 31).

## **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute

about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

All of the Defendants seek summary judgment—Bustamante-Munt, Scott, and Ray (collectively, the "Deputy Defendants") based on qualified immunity; and the Sheriff because none of its employees violated Therrien's constitutional rights, or, alternatively, because there is no municipal liability. Construing the evidence in the light most favorable to Therrien, the Court agrees with Defendants and concludes Therrien's clearly established constitutional rights were not violated by Defendants.

**A. Qualified Immunity**

The Deputy Defendants all claim they have qualified immunity that prevents them from being held liable by Therrien for his claims in Counts I (excessive force) and III (failure to intervene). Qualified immunity protects government officials (sued in their individual capacities) engaged in discretionary functions unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted). So qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). At the summary judgment stage, courts view the

facts from Plaintiff's perspective because the determinative issue is "not which facts the parties might be able to prove, but, rather, whether or not certain given facts" demonstrate a violation of clearly established law. *Santana v. Miami-Dade Cty.*, No. 15-14338, 2017 WL 2191468, at *4 (11th Cir. May 17, 2017).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). There is no dispute here that the Deputy Defendants were acting within the scope of their discretionary authority. Once a defendant demonstrates he was acting within the scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the [official] violated a constitutional right, and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). So Therrien must demonstrate that the Deputy Defendants violated Therrien's constitutional rights and that the rights were "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of the Deputy Defendants' actions. *Saucier v. Katz*, 533 U.S. 194, 201, (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223.

When considering whether the law clearly established that particular conduct violated a constitutional right, courts consider whether the defendants had "fair warning." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). "Fair warning" comes from binding case law from the Supreme Court, the Eleventh Circuit, or the highest court of the state that "make [s] it obvious to all reasonable government actors, in the defendant's place,

9

that what he is doing violates a federal law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (citation omitted).

A plaintiff can demonstrate that a defendant had "fair warning" in one of three ways: (1) by pointing to binding precedent that is materially similar; (2) by invoking a "broader, clearly established principle" that should control under the facts of the case; or (3) by showing that the complained of conduct "lies so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Jones v. Fransen*, No. 16-10715, 2017 WL 2198126, at *5 (11th Cir. May 19, 2017). Here, Therrien appears to rely on the third method as he cites to no case law in his response and does not reference any broad, clearly established principle that the Court should consider.

For the reasons below, the Court concludes the evidence does not show either the violation of a constitutional right or that the right Therrien alleges was violated was clearly established.

The Court begins its analysis by considering whether the evidence shows the violation of a constitutional right. Therrien's first claim, and his core claim, is that the Deputy Defendants used excessive force against him. Excessive force claims under the Fourth Amendment are subject to the "objective reasonableness" standard. *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009). Under this standard, court consider whether an officer's conduct was reasonable under the unique facts confronting the officer from the viewpoint of a reasonable officer, as opposed to with the "20/20 vision of hindsight." *Id.* This Court is also mindful that "the right to make an arrest or investigatory stop necessarily

carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted).

In considering whether an officer's conduct was objectively reasonable, courts are directed to consider the following factors: (1) the severity of the crime; (2) whether the individual "poses an immediate threat to the safety of the officers or others"; (3) whether the individual actively resists or tries to evade arrest by flight, *id.* (quoting *Graham*, 490 U.S. at 396); (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; (6) the severity of the injury; and (7) whether officers applied force "in good faith or [rather did so] maliciously and sadistically." *Fransen*, 2017 WL 2198126, at *6. Ultimately, "[f]orce is excessive when the amount and degree surpass what is "necessary in the situation at hand." *Lee*, 284 F.3d at 1197.

Considering these factors, the Court concludes that the Deputy Defendants' use of force was objectively reasonable. Although Therrien was stopped for a non-criminal traffic violation, he refused to obey Bustamante's (and later Scott's) lawful order to remain in his vehicle during the stop. Therrien also made a veiled threat to Bustamante-Munt, saying, "You're pissing me off and I'll tell you right now it's not a good thing." This refusal, especially in conjunction with the veiled threat and Therrien walking around his truck where he was not entirely visible, posed a significant risk to officer safety. And, importantly, it gave Bustamante-Munt and Scott arguable probable cause to arrest Therrien for obstruction[6]—a criminal offense.

---

[6] Therrien did not respond to Bustamante-Munt's argument that the deputies had arguable probable cause to arrest Therrien for obstruction. (Doc. 35, pp. 16–17). And Therrien has not

11

Therrien actively resisted Bustamante-Munt and Scott, thus requiring force to make the arrest. Therrien repeatedly told them he would not go peacefully, refused to put his hands behind his back, grabbed at them as they tried cuff him, and generally fought back. Particularly telling is this exchange: Scott tells Therrien, "All you gotta do is let us cuff you behind your back." Therrien responds, "No, you ain't cuffing me. … I'll be a son of a bitch if I'm gonna let you fucking people living off me just do what they want to do with me." So Therrien resisted arrest with force that belies his age and claims of frailty.

The next factor requires the Court to consider the amount of force used in light of the need for force. Therrien claims he was elbowed and beat by the officers while on the ground.[7] Assuming this is true, the facts do not indicate that the force used was greater than what was necessary to subdue Therrien. Again, Therrien refused to "go peacefully" and be handcuffed even after the deputies had taken him to the ground. The deputies did not use weapons (*e.g.* clubs or stun guns) on Therrien, and Therrien himself says that the two officers were sitting on him in the audio recording.

This conclusion dovetails directly into the issue of how severely Therrien was injured by the deputies' use of force. In his own words, Therrien "suffered injuries to

---

alleged that he was falsely arrested. So the Court concludes that Therrien does not dispute that the deputies had, at the very least, arguable probable cause to arrest him for obstruction.

[7] The Court, though, has its doubts about Therrien's claims that he was severely beaten. Therrien is heard in the audio recording talking in a normal voice. He laments that two 200-pound men are sitting on him, but does not sound like he is in distress. The deputies' tone and words also indicate that they were only holding Therrien down. And, conspicuously, Therrien never mentions that he is being beaten even though he discusses everything from taxes to passersby to his morning coffee. But because none of the alleged events takes place where they can be seen in the video, the Court accepts Therrien's allegations as true for the purposes of this order.

mouth, head, ears, back and neck…." (Doc. 44, ¶8.m.). Therrien also provides photographs showing minor injuries, but no other evidence. And as the video shows, these minor injuries could have resulted from Therrien simply being held down on the rocky and rough terrain since he had on only shorts and an unbuttoned shirt.

But whether the injuries were the result of the location or the deputies' conduct is ultimately immaterial because Therrien's injuries were not more severe than would be expected under the circumstances. For instance, the photographs Therrien submitted with his affidavit show abrasions on his body, but no bruises or black eyes or other severe injuries. The video shows that Therrien was able to walk, even if ever-so-slightly assisted by deputies, to the patrol vehicle after finally being handcuffed. And it is telling that Therrien refused treatment at the scene by paramedics. Taken together, the Court concludes that Therrien's injuries are not more severe than expected under the circumstances.

Finally, the Court must consider whether the force was applied in good faith and concludes that it was. The Deputy Defendants repeatedly tried to handcuff Therrien, who forcibly resisted. Therrien called the Deputy Defendants slurs, threatened them and their livelihoods, and refused to cooperate. The Deputy Defendants had a good-faith basis to use force against Therrien, and did not escalate the amount of force being used; instead, they requested additional deputies to help subdue Therrien instead of turning weapons on him. Nothing in the videos or that Therrien said in his affidavit indicates any malicious intent by the Deputy Defendants.

Considering all of these factors and viewing the facts in favor of Therrien, the Court concludes the Deputy Defendants are all entitled to qualified immunity because the amount

of force they used was no greater than necessary to arrest Therrien. In other words, the Court concludes the evidence before it does not show that there has been a constitutional violation. And because the Court concludes the Deputy Defendants did not use excessive force as alleged in Count I, none of the Defendants can be liable for failure to intervene in Count III.

But even if there was a constitutional violation, Therrien failed to carry his burden by showing that his constitutional rights under these circumstances were so clearly established as to provide fair notice to the Deputy Defendants. Therrien cited no cases that were analogous. Therrien cited no broad, clearly established principles applicable to these facts. And Therrien failed to articulate any reason the Court should conclude that the Deputy Defendants' conduct under these circumstances "lies so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent." *Priester*, 208 F.3d at 926. So even if there was a constitutional violation, the Deputy Defendants would still be entitled to summary judgment based on Therrien's failure to carry his burden.

**B. Sheriff Not Liable because No Constitutional Violations**

Therrien argues the Sheriff of Marion County is also liable for the use of excessive force based on the Sheriff's Office's policy or custom of using excessive force during arrests. But because the Court concludes there was no constitutional violation, there is no basis on which to hold the Sheriff liable. *Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009). As such, the Court need not consider whether the Sheriff's Office has a policy or custom of using excessive force. *Rooney v. Watson*, 101 F.3d 1378 (11th

Cir.1996) (unnecessary to review argument of failure to train by sheriff when deputy did not violate a constitutional right).

## **CONCLUSION**

Therrien admittedly ran a stop sign, and then became angry when Bustamante-Munt pulled him over. Therrien refused Bustamante-Munt and Scott's orders to remain in his vehicle simply because Therrien would not be told what to do while on his property. But that is no excuse to disobey lawful orders from law enforcement. And had Therrien simply obeyed, none of this would have happened.

While refusing to remain in a car does not justify law enforcement using excessive force to arrest someone, the evidence provided to this Court simply disproves Therrien's claims that the Deputy Defendants used excessive force on Therrien. Yes, Therrien was 73—but he was strong enough to prevent two deputies from placing him in handcuffs. Yes, Therrien suffered some injuries—but he refused to "go peacefully" and forced the Deputy Defendants to use the force necessary to place him under arrest. So the Court concludes that the Deputy Defendants did not violate Therrien's constitutional rights by using only the amount of force necessary to arrest him. And because the Deputy Defendants did not violate Therrien's rights, the Sheriff also cannot be held liable.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Defendants Sheriff, Scott, and Ray's Motion for Summary Judgment (Doc. 33) is GRANTED.

2. Defendant Bustamante-Munt's Motion for Summary Judgment (Doc. 35) is GRANTED.

3. The Clerk is directed to enter final judgment in favor of Defendants Sheriff of Marion County on Counts II and III, and in favor of Eduardo Bustamante-Munt, Sherwin Scott, and Walter Ray on Counts I and III, and against Plaintiff Kenneth Therrien on all counts.

4. All pending motions are denied as moot.

5. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida, this 5th day of June, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record